THE FIRST NATIONAL BANK & TRUST COMPANY, RECEIVER, *vs.* CARRIE MANNING ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued December 8th, 1932—decided February 28th, 1933.

*William S. Hyde,* for the appellant (defendant).

*Frederick C. Hesselmeyer,* with whom, on the brief, was *Thomas A. Grimes,* for the appellee (plaintiff).

BANKS, J.  This is an action brought by the plaintiff as receiver of The Broadway Bank & Trust Company, a state bank located in New Haven, to recover a payment made to a depositor which is claimed to be void under the provisions of § 3933 of the General Statutes which reads as follows:  "All payments or conveyances made by any such bank or trust company in contemplation of insolvency, to or for the use of any or all its creditors, with the fraudulent intent to prevent the distribution and appropriation of its effects in the manner prescribed by section 3935, shall be void." Section 3935 provides that the avails of the property of an insolvent bank or trust company in the hands of a receiver shall be appropriated ratably to the payment of various claims in the order specified therein.

From the finding, which is not subject to any material correction, the following facts appear:  The defendant Treat was treasurer of The Broadway Bank

& Trust Company and the defendant Manning, who is his mother-in-law, had an account of $500 in the savings department of the bank which was carried under the heading "Carrie Manning, R. V. Treat, Agent," the pass book being in the possession of Treat, who had authority to sign withdrawal orders and manage the account. The bank became insolvent in December, 1931, and on Thursday, December 17th, a serious "run" started on the bank which continued on Friday, Saturday, Monday and Tuesday. On Tuesday, December 22d, at ten minutes of three, no funds remained in the bank, payment was suspended and by order of the bank commissioner the bank did not open on the following day, and the plaintiff was subsequently appointed receiver.

On Sunday, December 20th, Treat visited Mrs. Manning, who told him she had read about the "run" on the bank, requested him to look out for her money which she did not wish "tied up" in the event the bank failed, and told him to withdraw it. Treat did not withdraw the money on Monday, but on Tuesday afternoon, after he had learned that the bank was about to close, he directed a teller to bring $500 and a withdrawal order to his private office and not to say anything about it, and thereupon withdrew the $500 and closed the account. At this time there was a good deal of excitement in the bank and a large number of depositors were in line waiting to make withdrawals at the regular windows, many of whom were unable to procure their funds before the bank suspended payment. Treat knew that the bank was insolvent and was about to close when he made the withdrawal which he made as agent and treasurer of the bank and as agent of Mrs. Manning.

The trial court held that the withdrawal was not made in the ordinary course of business, that it was

a payment made in contemplation of insolvency and with intent to prefer Mrs. Manning over other creditors and was void under the terms of the statute.

Preferential payments by an insolvent bank or trust company to creditors are not void or voidable at common law in the absence of a secret trust for the benefit of the debtor; *Cosmopolitan Trust Co. v. S. L. Agoos Tanning Co.*, 245 Mass. 69, 139 N. E. 806; and in an early case in this State it was held that an insolvent bank might legally prefer one depositor over others. *Catlin v. Eagle Bank*, 6 Conn. 233. Subsequent to the decision in that case, the statute under which the present action was brought was enacted, and has continued in force, in substantially its present form, since 1837. Somewhat similar statutes have been enacted in other jurisdictions, and a Federal statute renders void any payment by a national bank made in contemplation of insolvency and with a view to the preference of one creditor to another. Cases brought under these statutes, both Federal and State, may be found in an annotation in 74 A. L. R. 937. The two elements of proof essential to a recovery under them are that the payment or transfer attacked must have been made (1) in contemplation of insolvency, and (2) with intent to effect a preference. That the bank is actually insolvent, and the payment therefore necessarily preferential, is not sufficient. A payment made by an insolvent bank to a depositor in the regular course of business is not an unlawful preference, in the absence of proof of an intent to prefer, which will not be inferred from such payment alone. Thus a withdrawal by a depositor, who has no definite knowledge of the insolvency of the bank, made during a "run" on the bank but while it is still open for business and meeting all demands as they are made, will not ordinarily be held void. *Stone v. Jenison*, 111 Mich. 592, 70 N. W.

149. Where, however, a favored depositor is given advance information as to the impending closing of the bank, or special facilities, not available to depositors generally, for withdrawing his account, or when the officials of the bank make payments, not in the ordinary course of business, to favored creditors upon the eve of insolvency, an intent to create a preference will ordinarily be inferred. *Vann* v. *Federal Reserve Bank,* 47 Fed. (2d) 786; *Swentzel* v. *Penn Bank,* 147 Pa. St. 140, 23 Atl. 405, 415; *James Clark Co.* v. *Colton,* 91 Md. 195, 46 Atl. 386; *McGregor* v. *Battle,* 128 Ga. 577, 85 S. E. 28; *Lamb* v. *Ulrich,* 94 Okl. 240, 221 Pac. 741; *Browne* v. *Stronach,* 7 Fed. (2d) 685; *National Security Bank* v. *Butler,* 129 U. S. 223, 9 Sup. Ct. 281; 3 R. C. L., p. 646, § 275. When the depositor has thus received preferential treatment, not accorded to depositors in general, resulting in a preferred payment of his debt, such payment may be held void under the statute.

The trial court's conclusion that the withdrawal of this deposit by Treat was made in contemplation of insolvency was justifiably based upon its finding that he knew that the bank was insolvent and that it was about to close. The finding also supports the conclusion that the withdrawal was made with intent to prefer the depositor, Mrs. Manning. In making the withdrawal Treat was acting both as an official of the bank and as agent for his mother-in-law, Mrs. Manning. His knowledge as such agent was her knowledge. *Lane* v. *United Electric Light & Water Co.,* 88 Conn. 670, 674, 92 Atl. 430. The legal situation, therefore, does not differ from that which would have existed if, with knowledge that the bank was about to close, he had withdrawn his own deposit, in which case the almost inevitable inference would be that it was done in order to obtain a preference over other depositors.

*Swentzel* v. *Penn Bank, supra.* Moreover, the with-drawal was not made in the ordinary course of business and was effected by the use of facilities not available to other depositors. It is true the bank was then open for business and depositors were in line waiting to make withdrawals. Many of these, however, were unable to procure their funds before the bank closed, while Treat, in his capacity as an official of the bank and with his knowledge that it was about to close, obtained imme-diate payment of this deposit to himself as agent of Mrs. Manning.

The statute invalidates a payment made with "fraudulent intent" to prefer. In a preferential trans-fer the fraud is constructive or technical, consisting in the infraction of the rule of equal distribution among all creditors, which it is the policy of the law to enforce when all cannot be fully paid. In a fraudulent trans-fer the fraud is actual—the bankrupt has procured an advantage for himself out of what in law should be-long to his creditors, not to him. *In re Maher,* 144 Fed. 503, 509; *Coder* v. *Arts,* 213 U. S. 223, 241, 29 Sup. Ct. 436. The facts of this case establish the neces-sary element of fraudulent intent to prevent a distri-bution of the assets of the bank as provided by statute.

The action sounds in tort, and the defendant Treat, though acting as agent, actively participated in the commission of the tort, and judgment was rightly ren-dered against both defendants. *Semple* v. *Morgan-stern,* 97 Conn. 402, 116 Atl. 906.

There is no error.

In this opinion the other judges concurred.